# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Nan R. Nolan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 C 02488 | **DATE** | 3/4/2011 |
| **CASE TITLE** | Alice E. Haack vs. Deann Bongiorno | | |

**DOCKET ENTRY TEXT**

For the reasons stated below, Defendants' Motion *in Limine* Nos. 1-22 [Docs. 33, 58] are **granted in part, denied in part, and reserved in part**; Defendant's Motion *in Limine* No. 23 [Doc. 34] is **reserved**; Defendant's Motion *in Limine* No. 24 [Docs. 35, 69] is **granted in part and denied in part**; and Defendant's Motion *in Limine* No. 25 [Docs. 48, 70] is **reserved**.

■[ For further details see text below.]

## STATEMENT

In this diversity action, Plaintiff charges Defendant with negligence. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and this case is set for trial on June 13, 2011. Before the Court are Defendant's 25 motions *in limine*. For the reasons set forth below, the motions are granted in part, denied in part, and reserved in part.

### I. BACKGROUND

In this person injury action, Plaintiff claims she was injured in a two-vehicle automobile accident that took place on May 4, 2006, in Lansing, Illinois. Plaintiff alleges that the accident was the fault of Defendant. Defendant admits that she was negligent, but also contends that some liability lies with Plaintiff in causing the motor vehicle accident. The parties also dispute the extent of Plaintiff's injuries, and whether any of Plaintiff's injuries are permanent.

| STATEMENT |
|---|

## II. APPLICABLE LAW

A motion *in limine* is "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *see also American Int'l Adjustment Co. v. Galvin*, 86 F.3d 1455, 1463 (7th Cir. 1996) ("A motion in limine is a useful device for trying to exclude evidence before trial in order to prevent the trial from being interrupted by wrangles over admissibility or the jury from getting a whiff of prejudicial evidence that may in fact be inadmissible."). "The movant has the burden of demonstrating that the evidence is inadmissible on any relevant ground, 'for any purpose.'" *Bastilla v. Village of Cahokia*, 2010 WL 119132, at *1 (S.D. Ill. Jan. 11, 2010) (quoting *Plair v. E.J. Brach & Sons, Inc.*, 864 F. Supp. 67, 69 (N.D. Ill. 1994)). District courts have broad discretion in ruling on motions *in limine*, but evidence should not be excluded before trial unless it is clearly inadmissible on all potential grounds. *Kiswani v. Phoenix Sec. Agency, Inc.*, 247 F.R.D. 554, 557 (N.D. Ill. 2008). Otherwise, rulings should be deferred until trial so questions of foundation, competency, relevancy, and potential prejudice may be resolved in proper context. *Id*.

A court's decision to deny a motion *in limine* does not mean that all evidence contemplated by the motion will be admitted at trial. "Rather, denial means the court cannot determine whether the evidence should be excluded outside the trial context." *McClain v. Anchor Packing Co.*, 1996 WL 164385, at *2 (N.D. Ill. Apr. 3, 1996). Accordingly, "the ruling is subject to change when the case unfolds . . . . Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." *Luce*, 469 U.S. at 41–42; *see Kiswani*, 247 F.R.D. at 557 ("Trial judges may alter prior in limine rulings, within the bounds of sound judicial discretion.") (citation omitted). The Court addresses each motion *in limine* in turn.[1]

## III. DISCUSSION

### A. Motion *in Limine* No. 1

In Defendant's Motion *in Limine* No. 1, she moves to bar any evidence that Defendant has liability insurance and that the liability insurance carrier will pay any award rather than Defendant personally. (Doc. 33 at 1; *see* Doc. 58 at 1.) Plaintiff did not file a response to the motion.

"Evidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully." Fed. R. Evid. 411; *see also King v. Harrington*, 447 F.3d 531, 533 (7th Cir. 2006) ("The Federal Rules of Evidence and federal law govern the admissibility of evidence in diversity cases."). Defendant's Motion *in Limine* No. 1 is **granted**.

### B. Motion *in Limine* No. 2

In Defendant's Motion *in Limine* No. 2, she moves to bar any evidence that Plaintiff did not receive medical treatment because she could not afford to pay for it. (Doc. 33 at 1; *see* Doc. 58 at 1.) Plaintiff did not file a response to the motion.

Generally, a party's financial status is inadmissible if it is irrelevant and unduly prejudicial. *See Georgeson v. DuPage Surgical Consultants, Ltd.*, 2007 WL 914207, at *3 (N.D. Ill. March 22, 2007); *see also Scheibel v. Groeteka*, 538 N.E.2d 1236, 1251 (Ill. App. Ct. 1989) (reference to a party's financial status can be "so harmful and prejudicial as to [result] in the return of an improper verdict"). However, if a party's financial status is relevant to an issue before the court and is not unduly prejudicial, it is admissible. *See Georgeson*, 2007 WL 914207, at *3. For example, if Defendant were to introduce evidence that Plaintiff was not seriously injured because she did not seek medical care, then Plaintiff's ability to afford medical care would be relevant and admissible. Accordingly, Defendant's Motion *in Limine* No. 2 is **reserved**.

**STATEMENT**

**C. Motion *in Limine* No. 3**

In Defendant's Motion *in Limine* No. 3, she moves to bar evidence that this case could not be, or was not settled, and that there were settlement negotiations by or between the parties. (Doc. 33 at 1; *see* Doc. 58 at 1.) Plaintiff did not file a response to the motion.

Under the Federal Rules of Evidence, evidence, conduct, statements or promises to accept valuable consideration in attempting to compromise a claim are inadmissible "when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction." Fed. R. Evid. 408(a); *accord Georgeson*, 2007 WL 914207, at *4. Defendant's Motion *in Limine* No. 3 is **granted**.

**D. Motion *in Limine* No. 10**[2]

In Defendant's Motion *in Limine* No. 10, she moves to bar any comments by Plaintiff's counsel, during the trial or voir dire, that Defendant has failed to call a medical witness to refute causation and damages. (Doc. 33 at 3; *see* Doc. 58 at 1–2.) Defendant contends that she "does not have the burden of proof and therefore is not obligated to present any evidence on any issue or provide any medical evidence or testimony whatsoever." (*Id.*) Plaintiff did not file a response to the motion.

The plaintiff has the burden of proving the defendant's negligence. *Krywin v. Chicago Transit Authority*, 938 N.E.2d 440, 451 (Ill. 2010) ("The burden to prove all the elements of a negligence claim remains on the plaintiff throughout the proceedings. It is not the defendant's burden to disprove negligence."). However, where, as here, the defendant claims that the plaintiff was contributorily negligent, it is the defendant's burden to prove that the plaintiff was negligent and that plaintiff's negligence was a proximate cause of plaintiff's injury. *See D.C. v. S.A.*, 687 N.E.2d 1032, 1038 (Ill. 1997) ("With the advent of comparative negligence, both logic and fairness dictated that the defendant, who stood to benefit from a showing that the plaintiff was negligent, was the party who should have the burden of proof on the issue."); (*see also* Proposed Pre-Trial Order 2 (asserting that "Plaintiff holds some negligence for failing to keep a proper lookout").) Defendant's Motion *in Limine* No. 10 is **denied**.

**E. Motion *in Limine* Nos. 13 and 25**

In Defendant's Motion *in Limine* Nos. 13 and 25, she moves to bar Plaintiff from testifying to a medical diagnosis or using medical terms to describe her injuries. (Doc. 33 at 3; Doc. 48 at 1; *see* Doc. 58 at 2; Doc. 70 at 2–3.) Defendant contends that Plaintiff "lacks the qualifications to testify to a medical diagnosis or condition such as 'herniated disc' or 'transverse fracture' as opposed to testimony that [she] 'broke' [her] arm or 'hurt' [her] back." (Doc. 33 at 3.) For example, Defendant argues that Plaintiff, or any lay witness, should be barred "from testifying that she suffered a 'fractured,' 'chipped,' or 'broken,' jaw as a result of this accident." (Doc. 48 at 1.) Plaintiff did not respond to these motions.

Under the Federal Rules of Evidence, "a witness does not need to be a doctor to discuss his or her health in general terms." *Collins v. Kibort*, 143 F.3d 331, 337 (7th Cir. 1998) (citing Fed. R. Evid. 601, 701, 702); *Sachs v. Reef Aquaria Design, Inc.*, 2007 WL 3223336, at *13 (N.D. Ill. Oct. 25, 2007) ("Under Federal Rule of Evidence 701, a lay person may offer opinion testimony providing the witness testifies to what he or she has perceived firsthand."). Thus, "courts have routinely held that lay individuals are certainly capable of reliably understanding and testifying to their own medical condition." *Gage v. Metro. Water Reclamation Dist.*, 365 F. Supp.2d 919, 929 (N.D. Ill. 2005); *see*, *e.g.*, *Larsen v. Barrientes*, 2010 WL 2772325, at *3–4 (N.D. Ind. July 12, 2010) ("Larsen may testify about his own perception of his physical and mental health, before and after the incident. This includes recounting any pain, fear, or anxiety he experienced during those times. No [lay] witness, however, shall be permitted to opine that the arrest proximately caused Larsen's

| STATEMENT |
|---|

mental and physical health problems or offer a medical diagnosis of his alleged injuries. Larsen can only lay the groundwork for the jury to infer causation by testifying about his present health conditions and whether they appeared prior to the incident.") (citations omitted); *cf. McQuiston v. Helms*, 2009 WL 554101, at *11 (N.D. Ind. March 4, 2009) ("McQuiston cannot opine on medical causation or the impact of Dr. Brokaw's medical diagnosis on his ability to work in the future because those opinions would necessarily have to be 'based on scientific, technical, or other specialized knowledge.'").

In *Collins*, the Seventh Circuit found no abuse of discretion by the trial court in allowing the plaintiff "to testify that he had a hernia and bleeding ulcers which required medical treatment after he lost his health benefits." 143 F.3d at 337. The court noted that the plaintiff "did not discuss his ailments in detail, and he also did not suggest that [defendant] caused his medical condition. He simply explained why he was in the hospital in November 1994." *Id.*; *see United States v. Cravens*, 275 F.3d 635, 640 (7th Cir. 2001) ("Although a lay person may readily observe a [health] problem, the *causation* of a mental disease or defect is a more technical medical determination such that a court would find expert testimony particularly useful to its ultimate decision.").

Similarly, "given the uniquely subjective nature of pain," a plaintiff can rely on her own testimony to prove pain and suffering. *Hendrickson v. Cooper*, 589 F.3d 887, 893 (7th Cir. 2009). "No expert testimony is required to assist jurors in determining the cause of injuries that are within their common experiences or observations." *Id.* at 892 ("Here, the cause of Hendrickson's pain was perfectly clear: Cooper beat him. Had Hendrickson claimed that Cooper never touched him but merely denied him access to medical care for several days, and that this delay in treatment exacerbated his back problems, we might require Hendrickson to support his theory of causation with some objective medical evidence.").

Here, Plaintiff may testify about her own perceptions of her physical health before and after the accident, including recounting any pain experienced during those times. No lay witness, however, is permitted to opine that the accident proximately caused Plaintiff's physical health problems or to offer a detailed medical diagnosis (or self-diagnosis) of Plaintiff's alleged injuries. Nevertheless, the Court will wait until trial to make definitive rulings on specific testimony by Plaintiff or other lay witnesses. Defendant's Motion *in Limine* Nos. 13 and 25 are **reserved**.

**F. Motion *in Limine* No. 23**

In Defendant's Motion *in Limine* No. 23, she moves to bar all expert medical testimony on behalf of Plaintiff, including opinions on causation, permanency of injury, whether treatment was reasonable and necessary, and whether charges for medical treatment was reasonable or necessary. (Doc. 34 at 1, 4.) Defendant contends that because Plaintiff has failed to disclose any of her trial witnesses as experts, they may testify only as fact witnesses. (*Id.* 3.) In her response, Plaintiff argues that her doctors "should be allowed to testify to the history they took from Plaintiff, the records they examined, the diagnoses they made, and the treatment they prescribed and prescriptions." (Resp. 3–4.)

The federal rules require a party to "disclose to the other parties the identity of any witness it may use at trial to present [expert] evidence under Federal Rule of Evidence 702, 703, or 705."[3] Fed. R. Civ. P. 26(a)(2)(A). An "expert" is a person who possesses "specialized knowledge" due to his "skill, experience, training, or education" that "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. The December 2010 amendments to the federal rules clarify that a written expert report is required only "if the witness is one retained or specially employed to provide expert testimony in the case." Fed. R. Civ. P. 26(a)(2)(B). A party must still disclose all other expert witnesses and must provide the other parties with the subject matter on which the experts are expected to present evidence, along with a summary of the facts and opinions to which the witness is expected to testify, but no written expert report is

required. Fed. R. Civ. P. 26(a)(2)(C); *see Musser v. Gentiva Health Svcs.*, 356 F.3d 751, 756–57 (7th Cir. 2004) ("Thus, *all* witnesses who are to give expert testimony under the Federal Rules of Evidence must be disclosed under Rule 26(a)(2)(A); only those witnesses "*retained or specially employed to provide expert testimony*" must submit an expert report complying with Rule 26(a)(2)(B).") (footnote omitted); *see also* Fed. R. Civ. P. 26(a)(2)(C) advisory committee's note (2010) ("Rule 26(a)(2)(C) is added to mandate summary disclosures of the opinions to be offered by expert witnesses who are not required to provide reports under Rule 26(a)(2)(B) and of the facts supporting those opinions. This disclosure is considerably less extensive than the report required by Rule 26(a)(2)(B). Courts must take care against requiring undue detail, keeping in mind that these witnesses have not been specially retained and may not be as responsive to counsel as those who have.").

"A witness who is not required to provide a report under Rule 26(a)(2)(B) may both testify as a fact witness and also provide expert testimony under Evidence Rule 702, 703, or 705. Frequent examples include physicians or other health care professionals and employees of a party who do not regularly provide expert testimony. Parties must identify such witnesses under Rule 26(a)(2)(A) and provide the disclosure required under Rule 26(a)(2)(C)." Fed. R. Civ. P. 26(a)(2)(C) advisory committee's note (2010); *see Musser*, 356 F.3d at 758 ("Even treating physicians and treating nurses must be designated as experts if they are to provide expert testimony.").

Generally, the failure to disclose an expert witness results in an exclusion of the evidence unless the nondisclosure was justified or harmless. *See* Fed. R. Civ. P. 37(c)(1); *Musser*, 356 F.3d at 758. However, exclusion of evidence is not mandated; instead, "district courts [should] carefully consider Rule 37(c), including the alternate sanctions available, when imposing exclusionary sanctions that are outcome determinative." *Musser*, 356 F.3d at 760; *see* Fed. R. Civ. P. 37(c)(1) ("In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions . . . ."). In determining whether to exclude testimony, the court is guided by: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Westefer v. Snyder*, 422 F.3d 570, 585 n.21 (7th Cir. 2005) (citation omitted); *see Bannister v. Burton*, 2011 WL 547487, at *6 (7th Cir. Feb. 14, 2011) ("In this case, the judge was correct that even if a report was necessary, the failure to file one was clearly harmless because Banister wasn't surprised by the doctor's testimony—he heard it before in the state trial. Also, Banister provides no evidence that the failure to file the report was in bad faith.").

Here, the Court granted Plaintiff an extension of time until February 9, 2011, to disclose any witnesses who would be testifying as experts. (Court's Order of Jan. 26, 2011.) Nevertheless, Plaintiff has not designated any expert witnesses pursuant to Rule 26(a)(2). Accordingly, Plaintiff's witnesses are precluded from offering any evidence under Federal Rule of Evidence 702, 703 or 705.

However, Plaintiff is not precluded from offering opinion testimony by lay witnesses. *See* Fed. R. Evid. 701 ("If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."). Rule 701 was adopted to avoid the fine distinctions between "fact" and "opinion" and toward greater admissibility of opinion evidence. *See Asplundh Mfg. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1195–96 (3d Cir. 1995) ("Rule 701's liberalization of the admissibility of opinion evidence is rooted in the modern trend away from fine distinctions between fact and opinion and toward greater admissibility, tempered with an understanding that

**STATEMENT**

the adversary process, and more specifically, cross-examination will correct any problems . . . ."). The Advisory Committee Note describes the rule's purpose:

> Witnesses often find difficulty in expressing themselves in language which is not that of an opinion or conclusion. While the courts have made concessions in certain recurring situations, necessity as a standard for permitting opinions and conclusions has proved too elusive and too unadaptable to particular situations for purposes of satisfactory judicial administration. Moreover, the practical impossibility of determining by rule what is a "fact," demonstrated by a century of litigation of the question of what is a fact for purposes of pleading under the Field Code, extends into evidence also. The rule assumes that the natural characteristics of the adversary system will generally lead to an acceptable result, since the detailed account carries more conviction than the broad assertion, and a lawyer can be expected to display his witness to the best advantage. If he fails to do so, cross-examination and argument will point up the weakness.

Fed. R. Evid. 701 advisory committee's note (1972) (citations omitted).

In sum, given the fine distinctions between "fact" and "opinion" testimony and between "lay" and "expert" witnesses, the Court will wait until trial to make definitive rulings on specific medical testimony. Defendant's Motion *in Limine* No. 23 is **reserved**.

### G. Motion *in Limine* No. 24

In Defendant's Motion *in Limine* No. 24, she moves to exclude Plaintiff's medical bills from evidence, or in the alternative to exclude the unpaid portion of each bill. (Doc. 35 at 1, 4–5; *see* Doc. 69 at 1, 5–6.) Defendant contends that because Plaintiff failed to respond to Defendant's request to admit regarding the billing history for her disclosed medical bills, she has, in effect, admitted that her paid medical bills total $5391.52.[4] (*Id.* 1–2, 4.) Thus, Defendant argues that Plaintiff is permitted to testify only to the paid portion of each bill as set forth in Defendant's request to admit. (*Id.* 4.) Further, Defendant asserts that expert medical testimony, which will not be offered in this case, is necessary to establish that the unpaid medical bills are fair and reasonable. (*Id.* 3, 4.) Plaintiff responds that the entire amount of her medical bills are admissible. (Resp. 4.)

"In order to recover for medical expenses, the plaintiff must prove that he or she has paid or become liable to pay a medical bill, that he or she necessarily incurred the medical expenses because of injuries resulting from the defendant's negligence, and that the charges were reasonable for services of that nature." *Baker v. Hutson*, 775 N.E.2d 631, 637–38 (Ill. App. Ct. 2002); *accord Acevedo v. Canterbury*, 2004 WL 1166602, at *3 (N.D. Ill. May 24, 2004). "When evidence is admitted, through testimony or otherwise, that a medical bill was for treatment rendered and that the bill has been paid, the bill is *prima facie* reasonable." *Baker*, 775 N.E.2d at 638. While a paid medical bill is a sufficient method to demonstrate reasonableness, it is not the sole method. *Acevedo*, 2004 WL 1166602, at *2. For example, a party seeking to admit an unpaid medical bill "can establish reasonableness by introducing the testimony of a person having knowledge of the services rendered and the usual and customary charges for such services." *Baker*, 775 N.E.2d at 638. However, expert testimony is required to establish that each unpaid medical bill is a "usual and customary" charge for such service. *See* Fed. R. Evid. 702. *See generally*, *Tsai v. Kaniok*, 541 N.E.2d 819, 821 (Ill. App. Ct. 1989) (expert testimony established "usual and customary" fees for surgical services); *Bosch Die Casting Co. v. Lunt Mfg.*, 603 N.E.2d 546, 552 (Ill. App. Ct. 1992) (expert testimony required to establish "usual and customary" attorney's fees).

Here, Plaintiff has admitted, and Defendant does not dispute, that Plaintiff's paid medical bills total $5391.52. (Proposed Pre-Trial Order 1, 7; Doc. 35 at 1–2, 4, 5; *see* Doc. 69 at 1–2, 4, 6.) However, because

| STATEMENT |
|---|
| Plaintiff has not designated any expert witnesses, the unpaid portion of each medical bill shall not be admitted. Thus, Plaintiff may testify only to the paid portion of each medical bill as set forth in the request to admit. Defendant's Motion *in Limine* No. 24 is **granted in part and denied in part**. |

1. The Court sequentially numbers Defendant's motions *in limine*, in the order in which they were filed.

2. Defendant has withdrawn Motion *in Limine* Nos. 4–9, 11, 12 and 14–22. (Doc. 58 at 1; *see* Doc. 33 at 2–5.)

3. Federal Rules of Evidence 702, 703, and 705 govern expert testimony.

4. "A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3). "A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b).